ALOIS ALT, petitioner,

*v.*

CAROLINE ROSE ALT, defendant.

[Decided October 30th, 1923.]

1. Where a husband files a petition for divorce on the ground of desertion, and the wife files a counter-claim charging extreme cruelty, and praying for maintenance, she must sustain her charge by such quality of proof as would entitle her to a divorce if she were the petitioner.

2. Evidence examined and *held* that the defendant has established her charge of extreme cruelty, and is entitled to a decree for maintenance.

---

On final hearing. On petition for divorce and counter-claim.

*Mr. John F. Faughnan,* for the petitioner.

*Messrs. Dalrymple & Campbell,* for the defendant.

BACKES, V. C.

This is a petition for divorce for desertion. The parties were married in 1901. They lived together until 1917,

when the defendant left. Her desertion was willful, continued and obstinate for two years, unless she can substantiate her charge of extreme cruelty, and this she must sustain by such quality of proof as would entitle her to a divorce were she the petitioner. *Rogers* v. *Rogers, 81 N. J. Eq. 479.* By counter-claim she sets up abandonment and refusal to support and prays maintenance under section 26 of the Divorce act.

When they were married the husband worked in a brewery and the wife was a maid. He continued to labor in the brewery until five years before the desertion, after which he kept a saloon in Newark. He tended bar and she did the vile work of keeping the barroon clean. A year after they were married she left him because, as she says, a night or two before he came home drunk from a party, struck her in the stomach and threw a lighted lamp on the floor behind the stove, but not at her, and that she feared a recurrence because he was preparing to go to another party. He persuaded her to return shortly afterwards. They then lived together until 1915 without any outstanding incidents except two, to be presently alluded to, when she again left because, as she says, he charged her with unfaithfulness. It seems they had just installed a telephone and her brother-in-law, in a spirit of fun, called her up early one morning. She says her husband had been up all night and was sitting with a bottle of whiskey before him, drinking, when the 'phone rang, which she answered, and upon explaining that it was her brother-in-law who called he refused to believe her and gave voice to his suspicion that the call was not for an honest purpose, and ordered her to pack her clothes and get out before he blew her brains out. She was away a short time and again he induced her to return. She quit finally in 1917, and her reason, as she tells it, is that he kept an opossum in the barroom, which he refused to remove after she had repeatedly complained that she feared the animal. She says that she became obsessed with fear of the beast and its presence tortured her night and day, awake and asleep. He finally removed it, and that night, she says, after her husband

had closed the saloon, he came to the bedroom in an ugly mood and upbraided her, saying: "I will finish this thing. I will see whether you are going to have your way about things or whether I am going to have mine. [Meaning about having the opossum in the barroom.] So he took and went for me; grabbed a revolver and went to hit me; I clung to him and begged that he not do harm to me and finally, when he quieted down, I got to bed and so did he. I made up my mind then and there if I lived until the day he went out and I would see my way clear to get out of that house I certainly would go never to return." She left a few days later while her husband was away gunning.

The two additional affairs related by her are: When her son was a boy his father struck him in the face and as he ran bleeding to her, and upon her remonstrating with her husband, he beat her. On another occasion, during a quarrel, she says, he chased her from the house, she in her night dress, and that he called out of the window to her to come back or that he would shoot her, and that in fear that something might happen to her boy she went back.

The background of her picture is a life with a drunken husband, brawls, abusive and vile language, cursings, beatings and threats of beatings, threats against her life, misery and despair, and from which, she says, there was no relief except by the step she finally took.

The son of the couple, now a young man, describes the life of his parents as one constant quarrel, and he puts all the blame on his father, and he corroborates his mother in the two matters last above related. He was not at home when his mother left in 1917. There is also slight corroboration from others, in that, when the husband solicited his wife's return upon three occasions after she left, he admitted ill-treatment and threats against her life, and that he promised reformation.

The husband makes a general and sweeping denial, and says that none of the alleged incriminating occurrences ever took place, and he points to the evidence of patrons of the

saloon and some of the neighbors who gave testimony that to all appearances the couple were on friendly relations and seemed to get along as well as most married folks; that they never heard the wife complain. In refutation of his wife's story he also calls attention to the fact that she did not leave until three or four days after the alleged assault in 1917, and that about a month before he had transferred his property and his bank account into their joint names. The testimony of his patrons and the neighbors is negative. Wives seldom parade their troubles. The transfer of the property was only just—the wife had helped to earn it; and the delay in her final departure was simply the awaiting of a favorable opportunity to carry out the purpose fixed in her mind on the night of the assault. While the occurrence of that night is not specifically corroborated, I find sufficient corroboration in the corroboration of much, if not all, of the rest of her tale of ill-treatment. *Orens* v. *Orens, 88 N. J. Eq. 29; Lasker* v. *Lasker, 91 N. J. Eq. 352.*

Extreme cruelty as defined by the authorities is established. *Csanyi* v. *Csanyi, 93 N. J. Eq. 11; Cavileer* v. *Cavileer, 94 N. J. Eq. 160.*

The petition will be dismissed and maintenance will be awarded the wife, with costs.